# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TERRY BUTLER, | ) |
| Plaintiff, | ) No. 04 C 5364 |
| v. | ) Maria Valdez, |
| | ) Magistrate Judge |
| JO ANNE BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security which denied Plaintiff Terry Butler's ("Butler") claims for Social Security Disability and Supplemental Security Income benefits, requested under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416, 423. On September 10, 2004, the parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Before the Court are Butler's and Defendant, Jo Anne Barnhart's (the "Commissioner") cross-motions for summary judgment. For the reasons provided below, Butler's motion is granted while the Commissioner's motion is denied.

## Background

At the outset, the Court notes that Butler's path in seeking social security benefits has been tortuous and has taken over a decade. In July 1995, Butler filed his first applications for disability insurance benefits and supplemental security income. (R. at 87-91.) After his applications were denied and the Social Security Administration (the "Administration") declined to reconsider that denial, Butler timely requested and received a hearing, which was held in April 1997. Thereafter, and notwithstanding Butler's allegations that he was "disabled since July 2, 1994 due to hernias, drug and alcohol abuse, asthma, and emotional problems," on April 30, 1998, the Administrative Law Judge ("ALJ") presiding over the hearing issued a decision in which she found that Butler was not disabled and thus not eligible for disability insurance benefits and supplemental security income under the Social Security Act. (R. at 10-18.)

Butler appealed the ALJ's April 30, 1998 decision to the U.S. District Court for the District of Arkansas. During the pendency of his appeal with that court, in December 1999 and January 2000, Butler filed a second set of applications for disability insurance benefits and supplemental security income. However, like with his first set of applications, the Administration denied Butler's second set of applications and also declined to reconsider that second denial. On July 17, 2000, Butler timely filed a request for a hearing. However, before the Administration conducted that hearing, in an opinion issued December 20, 2000, the magistrate judge presiding over Butler's appeal as to his first set of applications found that the ALJ erred by failing to call an vocational expert to determine whether Butler was able to perform "other substantial and gainful work within the economy, given [Butler's] age, education, and work experience." (R. at 244-246 (citing 20 C.F.R. § 404.1520(f))). As a result, the judge "remanded for a proper determination of whether there are

jobs in the national economy [Butler] can perform" noting that "the ALJ should ensure that a vocational expert is called to testify as to the existence of jobs available in the economy for an individual with [Butler's] limitations." (R. at 246.)

Following the district court's remand on the first set of applications and Butler's request for a hearing on the second set of applications, another hearing was scheduled for (and took place on) January 10, 2002. During this January 10, 2002 hearing, the ALJ considered not only the issues remanded as a result of the magistrate judge's decision on Butler's first set of applications, but also presided over the hearing considering Butler's second set of benefits applications. On February 19, 2002, the ALJ issued two separate opinions, each separately addressing each set of Butler's two applications.[1] While the ALJ bifurcated his decisions, both found that Butler was not entitled to disability insurance benefits or supplemental security income. *See* R. at 528, 537.

After learning of the denial of both application sets and disagreeing with that denial, Butler requested a review with the Administration's Office of Hearings and Appeals. (R. at 547.) After review, on November 15, 2002, the Appeals Council vacated the ALJ's hearing decisions noting that the two sets of "claims should have been consolidated and one decision issued" since "[t]he court order remanding the earlier applications and the subsequent Appeals Council remand rendered the subsequent applications as duplicate claims." (R. at 550.) Thus, the Appeals Council remanded to the ALJ with instructions to: (1) "[c]onsolidate the claims and issue one decision on the consolidated claim," (2) "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed

---

[1] Specifically, the ALJ noted that "[t]he hearing on the two claims in controversy was held concurrently. However, the decisions are being issued separately." (R. at 533.)

limitations," (3) "[o]btain evidence from a medical expert to clarify the nature and severity of the claimant's impairments," and (4) "[o]btain evidence from a vocational expert to clarify the effect of the assessed limitation on the claimant's occupational base." (R. at 551.)

On October 30, 2003, the Administration heard Butler's consolidated hearing. Witnesses at the hearing included Butler, his sister, a medical expert, Dr. Carl Leigh, a vocational expert as well as Butler's counsel, who received opportunities to examine the witnesses. Butler testified as to the last time he was able to work a regular job, the frequency he ingests alcohol, daily routines, as well as various aches and pains he allegedly suffers from. (R. at 639-43.) Butler also testified to his ability to follow directions as well as his ability to concentrate and be attentive, noting "[s]ome things are, is easier said than done." (R. at 661.) He added that his "memory's pretty good" and when asked if he considered himself "an emotionally stable person" with respect to bad news, Butler indicated that he could "handle it." (R. at 662.)

Following Butler's testimony, the ALJ questioned Butler's sister, Regina Georgulos. During the course of her relatively limited testimony, she also testified as to Butler's daily routines, and pointed out that Butler "get[s] up a lot to urinate" and that she hears him often "spitting and throwing up." (R. at 665.) After questioning Butler's sister, the ALJ turned to the medical expert, Dr. Leigh, who noted that he never personally examined Butler, but had the opportunity to review evidence in preparation for the hearing. (R. at 667.) Dr. Leigh testified that he limited his testimony to the case's physical aspects, adding that he was "not aware that there was any other mental impairment [outside of drug or alcohol use], but would not have paid much attention to that in [his] review." (R. at 669.) And, when asked to explain what he felt an appropriate residual functional capacity would be, Dr. Leigh testified that he would restrict Butler "to a medium level of physical exertion

-4-

as defined by [the] Social Security Administration with occasional climbing, limited fingering . . . avoiding concentrated exposure to, to vibration, and to hazaardous machinery, such as that with open blades or moving parts" adding "further limitations . . . that he should avoid concentrated exposure to the usual respiratory irritants, such as noxious fumes, dust, smoke, and he would be restricted to occasional push pull type of exertions involving the right upper extremity." (R. at 670.)

Finally, the ALJ heard testimony from GleeAnn Kerr, a vocational expert. She reviewed Butler's past relevant work history, noting that "[h]e had a variety of labor type positions that would be considered ranging from medium to heavy in physical demand and would be unskilled in nature." (R. at 671.) After the ALJ posed a hypothetical question to determine whether Butler could perform any past relevant work, the vocational expert testified that Butler could perform the responsibilities expected of a bagger, a dining room attendant or a porter. (R. at 673.) Thereafter, the ALJ concluded the hearing.

On November 18, 2003, the ALJ issued his decision, considering the general issue of whether Butler was entitled to disability, disability insurance benefits and supplemental security income payments. (R. at 220.) After reviewing Butler's background, and noting Butler's history of alcohol dependance and intermittent drug use, the ALJ found that Butler was not credible. (R. at 223.) In reaching that decision, the ALJ pointed to two instances of contradictory statements,[2] however, he somewhat lessened the impact of such statements when he noted that "[a]lthough the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may

---

[2]Specifically, the ALJ cited Butler's testimony regarding his driving habits and a statement made to a physician regarding alcohol use in May 2000. *See* R. at 223.

not be entirely reliable." (R. at 223.) The ALJ's opinion also reflected the inquiry of the vocational expert as directed by the U.S. District Court for the District of Arkansas. (R. at 226.) Ultimately, while finding that Butler (1) met "the nondisability requirements for a period of disability and Disability Insurance Benefits[,]" (2) had "not engaged in substantial gainful activity since the alleged onset of disability," (3) could not "perform any of his past relevant work" and (4) had a "severe" impairment pursuant to 20 C.F.R. §§ 404.1520(b) & 416.920(b), the ALJ found that Butler's medically determinable impairments did not "meet or medically equal one of the listed impairments" set forth in the regulations. (R. at 227.) And, he also found that Butler did not lack "the residual functional capacity to perform a somewhat restricted range of medium unskilled work" such that there were "a significant number of jobs in the regional and national economy that he could perform." (R. at 227.) Indeed, consistent with the vocational expert's testimony, the ALJ found that Butler could work as bagger, dining room attendant or a porter. *See* R. at 226; *cf.* R. at 673.

Apparently satisfied with the ALJ's resolution of the issues set out in its remand of November 15, 2002, the Appeals Council declined to review the ALJ's consolidated decision on Butler's applications, see R. at 206-08, thereby creating a final decision. *See* 20 C.F.R. § 416.1481. On August 13, 2004, Butler filed a complaint in the U.S. District Court for the Northern District of Illinois, seeking review of the ALJ's November 18, 2003 decision denying Butler benefits. Thereafter, the parties filed cross-motions for summary judgment - Butler filed his on December 14, 2005, while the Commissioner filed hers on February 15, 2005. With this background in mind, the Court turns to the issues presented therein.

## Legal Standard

The Court reviews an ALJ's "decision to deny benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (citing *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir.2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir.2000)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.2000). Where an ALJ's findings are supported by substantial evidence, this Court must affirm his or her factual findings, but where the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). Moreover, in reviewing the ALJ's decision, the Court "will not 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner.'" *Rice*, 384 F.3d at 369 (quoting *Lopez*, 336 F.3d at 539). Finally, "while the ALJ must have built a 'logical bridge from the evidence to his conclusion[, the Court] will nonetheless 'give the opinion a commonsensical reading rather than nitpicking at it.'" *Rice*, 384 F.3d at 369 (quoting *Steele*, 290 F.3d at 941; *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir.2000)) (internal citations omitted).

## Analysis

According to the Social Security Act, a claimant is disabled if he has the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In determining whether a claimant is disabled, an ALJ considers the

following five questions in order:

> 1. Is the claimant presently employed?
> 2. Does the claimant have a severe impairment?
> 3. Does the impairment meet or medically equal one of a list of impairments enumerated in the regulations?
> 4. Is the claimant unable to perform his former occupation?
> 5. Is the claimant unable to perform any other work?

20 C.F.R. § 416.920(a)-(f). If the ALJ reaches an affirmative answer at either Step 3 or Step 5, a claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). But, if the ALJ reaches a negative finding at any step other than Step 3, he or she is precluded from a finding of disability. *Id.*

## I. Butler's Arguments Concerning Whether the ALJ Followed the Applicable Regulations in Dealing With Butler's Substance Use.

In attacking the ALJ's decision, Butler does so under a number of theories. He starts by arguing that "[t]he ALJ wrongly rejected evidence of Butler's mental impairments solely on the ground that Butler abuses alcohol" such that "[t]he ALJ failed to follow the regulatory procedure for [the] evaluation of substance addiction, established in 20 C.F.R. § 404.1535." (Pl.'s Mem. P. & A. Supp. Pl.'s Mot. Summ. J. at 9 (hereinafter "Pl.'s Brief").) Thus, Butler argues, "[t]he requirements imposed by 20 C.F.R. § 404.1535(b) involve specific factfinding which must be done in the first instance by the ALJ, and which the ALJ's decision as written did not encompass." (Pl.'s Brief at 12.) As such he contends this failure supports a remand. (Pl.'s Brief at 12.) The Court disagrees.

In 20 C.F.R. § 404.1535, the Administration sets forth its procedure for dealing with drug abuse or alcoholism allegations and its effect on a determination of disability. Incorporating the 1996 amendments to the Social Security Act, section 404.1535 generally calls for the denial of a claimant's benefits application if substance abuse is a material, contributing factor to the disability

determination. *See* 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."). As section 404.1535(a) provides:

> *If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535(a) (emphasis added). Thereafter, in section 404.1535(b), the regulation sets forth the process the Administration "will follow when we have medical evidence of [a claimant's] drug addiction or alcoholism." *Id.*

Butler claims that the ALJ "put the cart before the horse" when he argues that the ALJ erred by "find[ing] that substance addiction is a contributing factor material to the determination of disability without first finding the claimant disabled." (Pl.'s Brief at 10.) Instead, it is Butler who is putting the cart before the horse. Before the process set forth in 20 C.F.R. § 404.1535(b) even comes into play, there must first be a determination by the ALJ that the claimant is disabled. *See* 20 C.F.R. § 404.1535(a) (beginning that "*[i]f we find that you are disabled* . . .") (emphasis added). Indeed, this process is explicitly recognized in the case extensively quoted by Butler, namely *Brueggemann v. Barnhart*, 348 F.3d 689, 693-95 (8th Cir. 2003). As *Brueggemann* reasoned in a passage quoted by Butler:

> The plain text of the relevant regulation requires the ALJ first to determine whether [the claimant] is disabled. The ALJ must reach this determination initially . . . using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders.

*Id. See also Kangail v. Barnhart*, No. 05-3674, 2006 WL 1970311, at *1 (7th Cir. July 14, 2006)

(citation in Federal Reporter forthcoming) ("When an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were the applicant not a substance abuser, she would still be disabled.") (citing 20 C.F.R. § 404.1535(b)(1); *Brueggmann*, 348 F.3d at 694-95); *Jackson v. Massanari*, No 98 C. 7709, 2001 WL 1415002, at *4 (N.D. Ill. Nov. 13, 2001) ("[T]the applicable regulations implicitly require the ALJ to first determine if a claimant is disabled. Then, if the claimant is found to be disabled, the ALJ is to determine if the claimant's polysubstance addiction is a contributing factor material to the ALJ's disability determination.") (citing 20 C.F.R. §§ 404.1535(a)). Moreover, the *Brueggemann* court also cited a social security law treatise for its proposition that "[a] finding of disability, is, in effect, a 'condition precedent' to applying the special rule on alcoholism and drug addiction." *Id.* at 693 (citing Frank S. Bloch, *Bloch on Social Security*, § 3.39 (2003)). Thus, while Butler spills ink on the ALJ's failure to specifically cite section 404.1535 in his opinion, this omission not surprising since the ALJ was not expected to apply that section as the ALJ did not find Butler "disabled" - even when considering his history of substance abuse. *See, e.g.*, R. at 222 ("The claimant's alcohol abuse has been duly noted, and is reflected in the residual functional capacity reached in this decision."); *id.* at 226 ("For all the foregoing reasons, the Administrative Law Judge concludes that the claimant retains the capacity for work that exists in significant numbers in the national economy and is not under a 'disability' as defined in the Social Security Act . . . ."). As a result, the Court rejects Butler's first basis for a remand.

## II. Butler's Arguments Concerning Whether The ALJ Erred In Crafting the Hypothetical Question Presented to the Vocational Expert.

Next, Butler disagrees with the ALJ's finding that Butler possesses "the residual functional capacity to perform a somewhat restricted range of medium unskilled work." (R. at 227.) Specifically, Butler attacks the following lengthy hypothetical posed to the vocational expert:

> At this point, I would like to pose a hypothetical. I wish you to assume a 48-year-old man with a high school plus one year of college education. This individual is impaired by neuromusculoskeletal impairments which have been described as lumbar strain and sprain, I believe it was described. This individual [is] apparently taking significant medications that would cause any adverse side effects in the ability to work. For the purposes of this hypothetical, I would limit it to a basic medium RFC described by Social Security, which would be lifting up 50 pounds occasionally, 25 pounds frequently, or further limited only to occasional climbing, limited fingering on the right side, should not be concentrated exposures to vibrations, work should not involve work at hazardous heights or around dangerous moving machinery, should not involve working in concentrated exposure to respiratory irritants, such as fumes, dust, things like that. Would further limit the use of the right upper extremity to only occasional pushing and pulling. And due to difficulties in the past, I would limit the, shouldn't have the availability of alcohol on the premises. Based on the limitations in this hypothetical, would this allow for any past relevant work?

(R. at 672.) In attacking this hypothetical, Butler argues that "[b]ecause the hypothetical in the instant case was defective . . . the [vocational expert's] response cannot constitute substantial evidence to support the ALJ's decision denying benefits." (Pl.'s Brief at 12.) Thus, he argues, "[t]he ALJ's determination that there are other jobs in the national economy that Butler can perform is not supported by substantial evidence in the record as a whole." (*Id.*) In offering this argument, Butler cites to three flaws with the ALJ's hypothetical.

First, he asserts that "the ALJ improperly relied on the opinion of Dr. Leigh, the medical expert who testified at the hearing but who never examined Butler." (Pl.'s Brief at 13.) For support, Butler relies on the Seventh Circuit's opinion in *Allen v. Weinberger*, 552 F.2d 781 (7th Cir. 1977),

-11-

for the court's pronouncement that opinions by two doctors, issued after the doctors reviewed a claimant's medical records but did not examine the claimant himself, in which the doctors "concluded that the evidence did not support a finding of total incapacity for a period of a year," "deserve[d] little weight in the overall evaluation of liability." (Pl.'s Brief at 13 (citing *Allen*, 552 F.2d at 786).)[3] In response, the Commissioner argues that Butler's first argument is "patently false," contending that "[t]he Seventh Circuit has long held that the *only* requirement for the hypothetical question is that its limitations be 'supported by the medical evidence' of record." (Def.'s Mem. Supp. Mot. Summ. J. at 6 (hereinafter "Def.'s Brief") (citing *Jens v. Barnhart*, 347 F.3d 209, 231 (7th Cir. 2003); *Cass v. Shalala*, 8 F.3d 552, 555-56 (7th Cir. 1993)) (emphasis added).

The Court finds that the ALJ properly relied on Dr. Leigh's opinion. In reaching this decision, the Court stresses that the applicable regulations expressly permit an ALJ to consider the testimony or reports of a non-treating or examining expert. *See* 20 C.F.R. § 416.927(f) ("We consider all evidence from nonexamining sources to be opinion evidence."); 20 C.F.R. § 404.1527 (same). And, in certain situations, the opinion of a non-examining physician may minimize the persuasiveness of an examining physician's opinion. For example, in *Skarbek v. Barnhart*, 390 F.3d 500 (7th Cir. 2004), after remarking that "[a] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record," the Seventh Circuit held that "[a]n ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting

---

[3]Specifically, the *Allen* court noted as follows: "The opinions of Dr. Brav and Dr. Green also have little force. Although their reports were not inadmissible as hearsay at the hearing before the ALJ . . . the weight to be attached to the reports must be considered in light of the fact that neither physician examined the plaintiff." *Allen*, 552 F.2d at 786.

physician, or when the treating physician's opinion is internally inconsistent, as long as he minimally articulate[s] his reasons for crediting or rejecting evidence of disability." *Id.* at 503 (internal citations and quotations omitted).[4] Thus, because the regulations and case law clearly contemplate that an ALJ may rely on the opinion of a consulting, non-examining physician, the Court will not hold otherwise.

Additionally, the Court finds that the *Allen* case, on which Butler substantially relies, is factually distinguishable from the present case. *Allen* instructs courts on how to proceed in cases involving conflicting opinions proffered by examining and non-examining physicians, particularly regarding the ultimate issue of disability. Under the facts presented in *Allen*, the court noted that the "speculative statement" and "retroactive evaluations of non-examining physicians" did "not constitute substantial evidence that plaintiff had the physical capacity to perform light work in the first year after his injury" given the treating physician's "close familiarity with plaintiff's condition and his opinion to the contrary." *Allen*, 552 F.2d at 786. And, in *Stephens v. Heckler*, 766 F.2d 284 (7th Cir. 1985), the Seventh Circuit noted the limited nature of *Allen* by explaining that the case "held only that the ALJ must take into account the treating physician's ability to observe the claimant over a longer period [such that when] experience backed by observation is set against the 'speculative statement' of a consulting physician, substantial evidence lies on the side of the treating physician." *Id.* at 288.

---

[4]Moreover, in *Stephens v. Heckler*, 766 F.2d 284 (7th Cir. 1985), the Seventh Circuit recognized the value of a consulting physician who examines a claimant for if only a short period of time when it noted a "consulting physician who specializes in diseases of [a particular kind] may contribute more knowledge to the administrative process after a one-hour examination than the general practitioner . . . contributes after years on the case." *Id.* at 289.

In the present case, however, it was impossible for the ALJ to give greater weight to an opinion by a treating or examining physician because, as observed by the ALJ, "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (R. at 224.) Thus, because there is no such opinion, there can be no conflict in opinions and the ALJ cannot assign greater weight to the treating physician's opinion. Accordingly, in the absence of a treating physician's opinion, the Court does not find that the fact that the ALJ relied on a non-examining physician's opinion in reaching his decision necessitates a remand.

Second, Butler argues that "the ALJ's hypothetical failed to include the mental limitations he conceded that Butler possesses." (Pl.'s Brief at 14.) Citing to portion of the ALJ's opinion in which the ALJ agreed that Butler's "mental impairment imposes moderate restrictions in his activities of daily living, and social functioning" and added that Butler "often has limitations in concentration, persistence, and pace," see R. at 222, Butler seeks a remand by asserting that "[n]one of these limitations were included in [the] hypothetical because, as discussed above, the ALJ failed to follow regulatory procedure setting for assessing substance abuse." (Pl.'s Brief at 14.)

To the extent Butler reincorporates his earlier argument, i.e., that the ALJ erred by not following the regulatory procedure for dealing with substance abuse issues, the Court reiterates that the ALJ was not expected to apply that framework because he did not find Butler "disabled" - a necessary step for the application of section 404.1535 - even when taking into account Butler's substance abuse issues. *See supra* at 8-10 (discussing the regulatory scheme contemplated in 20 C.F.R. § 404.1535). Regardless, the Court agrees that the ALJ erred in dealing with Butler's mental limitations, but not quite for the reasons argued by Butler. Rather, the Court finds that the ALJ failed

to provide a "logical bridge" which demonstrated that he included Butler's mental limitations in both the RFC, which in turn was used to construct the hypothetical question posed to the vocational expert.

As set forth above, the ALJ agreed that Butler's "mental impairment imposes moderate restrictions in his activities of daily living, and social functioning," noting that Butler "often has limitations in concentration, persistence, and pace." (R. at 222.) Yet, it does not appear that these considerations were taken into account in determining Butler's RFC. Instead, the Court is left to resolve the ALJ's statement that the medical expert "addressed only the claimant's physical impairments" with his conclusion that "based upon Dr. Leigh's opinion," Butler nevertheless retained "the residual functional capacity to perform a somewhat restricted range of medium unskilled work."[5] (R. at 222, 224.) And, both the hypothetical question and the ALJ's RFC conclusion in his opinion strongly resemble Dr. Leigh's response to the ALJ's request that he describe "an appropriate residual functional capacity in this case." (R. at 669.) To reiterate that previously noted, Dr. Leigh testified that he would restrict Butler "to a medium level of physical exertion as defined by [the] Social Security Administration with occasional climbing, limited fingering . . . avoiding concentrated exposure to, to vibration, and to hazardous machinery, such as that with open blades or moving parts" adding "further limitations . . . that he should avoid concentrated exposure to the usual respiratory irritants, such as noxious fumes, dust, smoke, and he would be restricted to occasional push pull type of exertions involving the right upper extremity."

---

[5]Indeed, as noted above, Dr. Leigh testified that he limited his testimony to the case's physical aspects, adding that he was "not aware that there was any other mental impairment [outside of drug or alcohol use], but would not have paid much attention to that in [his] review." (R. at 669.)

(R. at 670.)

Like in *Young v. Barnhart*, 362 F.3d 995 (7th Cir. 2004), "[i]f the ALJ meant to capture all of [the claimant's] problems within in [his] RFC, he has failed to build the 'accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.'" *Id.* at 1002 (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). Thus, because it is unclear as to whether the ALJ considered Butler's mental impairments in determining his RFC, the Court will afford him the opportunity to do so accurately and logically. And, if he excluded such limitations because he found them not to be supported by the evidence of record, then again, he will have the opportunity to explain why.[6]

---

[6]Because the Court remands for a new hearing for the reasons set forth above, the Court does not address Butler's additional arguments regarding whether the ALJ incorporated Butler's mental limitations in the hypothetical question posed to the vocational expert, whether the vocational expert's testimony in response to the ALJ's hypothetical was unresponsive, and whether the ALJ failed to reconcile an apparent conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* in harmony with Social Security Ruling 00-4p. Regardless, the Court urges the ALJ to exercise caution regarding such issues on remand.

## Conclusion

For the reasons provided above, the Court grants Butler's motion for summary judgment [doc. # 17] and denies the Commissioner's motion for summary judgment [doc. # 20]. Accordingly, the Court remands this case to the Commissioner pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**SO ORDERED**

DATE: JUL 18 2006

HON. MARIA VALDEZ
United States Magistrate Judge